RCV'D - USDC COLA SC
SEP 16 '26 AM11:52

**UNITED STATES DISTRICT COURT**

**DISTRICT OF SOUTH CAROLINA**

**CHARLESTON DIVISION**

---

**Patrick Lee Booker,**

Plaintiff,

v.

2:26-CV-4068-DCC-MGB

**John W. Kittredge, individually,**

Defendant.

---

# COMPLAINT FOR DEPRIVATION OF FEDERAL CIVIL RIGHTS

## 42 U.S.C. § 1983 — FIRST AND FOURTEENTH AMENDMENTS

---

**COMES NOW** Plaintiff Patrick Lee Booker who, proceeding *pro se*, brings this federal civil-rights action against Defendant John W. Kittredge solely in his individual capacity and alleges as follows:

## INTRODUCTION

1. This action concerns Defendant John W. Kittredge's alleged viewpoint discrimination and retaliation against Plaintiff Patrick Lee Booker during a public question-and-answer gathering held at The Citadel on September 11, 2024.

2. The constitutional violations challenged herein occurred **after the South Carolina Supreme Court had concluded its scheduled judicial proceedings and before the subsequent criminal-contempt episode involving Plaintiff.**

3. Plaintiff does not seek damages in this action because Defendant rendered a judicial decision, signed an order, adjudicated guilt, imposed a sentence, ruled upon a motion, or otherwise exercised an adjudicatory function.

4. Rather, Plaintiff challenges Defendant's conduct while Defendant was performing the separate, nonjudicial/ extrajudicial function of speaking to the public and moderating a public question-and-answer gathering after the scheduled judicial proceedings had ended.

5. During that public gathering, Defendant invited and answered general questions from students, faculty, and other attendees.

6. Plaintiff participated and expressed views concerning matters of substantial public concern, including law, government, constitutional rights, judicial authority, and criticism of governmental and judicial institutions.

7. Defendant subsequently informed Plaintiff that Plaintiff could **"remain and participate in the public gathering,"** but warned Plaintiff that if he continued talking at that time, Plaintiff would be removed from the auditorium.

8. Plaintiff wanted to remain at the gathering. Plaintiff therefore complied with Defendant's direction, sat down, and remained quiet.

9. Approximately eighteen minutes passed.

10. During those eighteen minutes, Defendant continued taking and answering questions from other attendees while Plaintiff remained quiet.

11. Defendant then affirmatively reopened the floor by asking whether anyone had any more questions.

12. Plaintiff responded to Defendant's invitation in an orderly manner: Plaintiff raised his hand and requested permission to ask the final question.

13. Defendant singled Plaintiff out and stated:

"*No, sir. Mr. Booker, we gave you a chance to speak. You asked your questions. We appreciate you being here. We're not gonna hear a question from you, Mr. Booker.*"

14. Plaintiff alleges that Defendant's selective exclusion was substantially motivated by Plaintiff's previous protected speech, criticism, questions, and viewpoint.

15. Plaintiff does not contend that the First Amendment gave him an unlimited entitlement to speak whenever he pleased, dominate the gathering, ask unlimited questions, or disregard reasonable rules governing orderly participation.

16. Nor does Plaintiff contend that a moderator violates the First Amendment merely by directing a participant temporarily to stop speaking, wait his turn, or permit another speaker to be heard.

17. The constitutional violation alleged here arises from what occurred ***after Plaintiff complied***.

18. Plaintiff remained quiet for approximately eighteen minutes. Any immediate need to stop Plaintiff from speaking had ended. Defendant thereafter reopened the Q&A to further audience

participation, Plaintiff followed the prescribed procedure by raising his hand, and Defendant imposed a speaker-specific prohibition against Plaintiff.

19. Defendant's own words expressly looked backward toward Plaintiff's earlier speech as the asserted reason for denying further participation: "*We gave you a chance to speak. You asked your questions*."

20. A temporary, viewpoint-neutral direction to remain quiet for purposes of maintaining order is one thing. A continuing, speaker-specific prohibition imposed in retaliation for a citizen's prior protected expression or because of his viewpoint is another.

21. The First Amendment prohibited the latter.

## PARTIES

22. Plaintiff Patrick Lee Booker is a citizen of the United States and a resident of South Carolina.

23. Defendant John W. Kittredge is a citizen of South Carolina and, at all times relevant, served as Chief Justice of the Supreme Court of South Carolina.

24. Defendant is sued **solely in his individual capacity**.

25. Defendant acted under color of state law because he exercised governmental authority and authority made possible by his public office in controlling and administering participation in the government-sponsored gathering.

26. Although Defendant occupied judicial office, the particular conduct challenged in this action occurred while Defendant was speaking to members of the public and moderating an extrajudicial

question-and-answer gathering rather than adjudicating a case or controversy.

## JURISDICTION AND VENUE

27. This action arises under the Constitution and laws of the United States, including the First and Fourteenth Amendments and 42 U.S.C. § 1983.

28. This Court possesses federal-question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

29. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391 because the events giving rise to Plaintiff's claims occurred at The Citadel in Charleston, South Carolina.

## FACTUAL ALLEGATIONS

### A. The Scheduled Judicial Proceedings Concluded

30. On September 11, 2024, the Supreme Court of South Carolina appeared at Capers Hall Auditorium at The Citadel in Charleston, South Carolina.

31. The Court conducted previously scheduled judicial proceedings involving cases properly before it.

32. Those scheduled judicial proceedings concluded.

33. Thereafter, Defendant conducted and participated in a public question-and-answer gathering involving students, faculty, members of the community, and other attendees.

34. During this portion of the event, no pending case was being argued.

35. No witness was being examined.

36. No evidence was being received.

37. No motion was being adjudicated.

38. No litigant or attorney was presenting argument concerning a pending cause.

39. Defendant instead invited and answered general questions from members of the attending public.

40. Defendant was therefore functioning as a public speaker and moderator of a public educational gathering rather than performing the adjudicative function of deciding a case or controversy.

**B. Defendant Opened the Gathering to Expressive Participation**

41. Defendant invited audience members to ask questions.

42. The question-and-answer gathering was therefore expressly participatory and expressive.

43. Defendant exercised control over recognition of audience members seeking to participate.

44. Plaintiff participated in the gathering.

45. Plaintiff's speech addressed matters of public concern, including law, constitutional rights, governmental institutions, judicial authority, and criticism of governmental action.

46. Plaintiff expressed viewpoints critical of government and judicial authority.

47. Criticism of government and governmental officials occupies the core of the First Amendment's protection.

**C. Defendant Told Plaintiff He Could "Remain and Participate"**

48. During Plaintiff's earlier participation, Defendant told Plaintiff that Plaintiff could **"remain and participate in the public gathering."**

49. Defendant also warned Plaintiff that if Plaintiff continued talking at that time, Plaintiff would be kicked out of the auditorium and that it was Plaintiff's choice.

50. At that juncture, Defendant did not tell Plaintiff that he was being held in contempt.

51. No criminal-contempt charge was announced to Plaintiff.

52. Defendant instead communicated a threatened consequence of removal from the auditorium if Plaintiff continued speaking.

53. Plaintiff believed his expression was constitutionally protected.

54. Plaintiff nevertheless wanted to remain at the public gathering and complied with Defendant's direction.

55. As Plaintiff began to sit down, Plaintiff stated to members of the audience:

"*Very well, lookup Patrick Booker. Patrick Lee Booker. Booker versus Toal.*"

56. Plaintiff thereafter remained quiet.

**D. "Participation" Cannot Mean Permanent Silence**

57. Defendant possessed legitimate authority as moderator to impose reasonable, viewpoint-neutral requirements necessary to maintain order, including directing an attendee temporarily to cease speaking, wait his turn, or allow another participant to be heard.

58. Plaintiff therefore does not allege that every temporary instruction to cease speaking at a public gathering independently violates the First Amendment.

59. But Defendant had expressly told Plaintiff that Plaintiff could "remain and **participate** in the public gathering."

60. The distinction between **participation** and **observation** is important.

61. The question-and-answer component of the gathering was inherently expressive: audience members participated by speaking, asking questions, and engaging in dialogue with Defendant.

62. A person allowed to remain physically present but permanently prohibited from speaking, asking a question, or otherwise engaging in the expressive component of a Q&A is not meaningfully participating in that component of the gathering.

63. Such a person is merely a **silent observer**.

64. Thus, Defendant could constitutionally require Plaintiff to become quiet temporarily for legitimate order-maintenance purposes without necessarily violating Plaintiff's First Amendment rights.

65. Defendant could not, however, transform that temporary instruction into a continuing, speaker-specific prohibition against Plaintiff's future expressive participation because Defendant disapproved of Plaintiff's earlier protected speech or anticipated viewpoint.

66. Plaintiff's subsequent conduct demonstrated his willingness to comply with reasonable requirements governing orderly participation.

## E. Plaintiff Complied for Approximately Eighteen Minutes

67. Plaintiff remained quiet for approximately eighteen minutes.

68. Plaintiff did not continue talking over Defendant during that period.

69. Plaintiff did not seize the floor.

70. Plaintiff did not prevent other attendees from asking questions.

71. Defendant continued conducting the public Q&A.

72. Defendant heard and answered questions from other attendees.

73. Upon information and belief, some attendees were permitted to speak or ask questions more than once.

74. Plaintiff nevertheless remained quiet and waited for Defendant to invite additional participation.

75. Whatever immediate justification Defendant may have possessed for directing Plaintiff to cease speaking eighteen minutes earlier had therefore dissipated by the time of the events that followed.

**F. Defendant Reopened the Floor**

76. Approximately eighteen minutes later, Defendant asked whether anyone had any more questions.

77. Defendant thereby affirmatively invited additional expressive participation from the audience.

78. Plaintiff had complied with Defendant's previous direction throughout the intervening period.

79. Plaintiff responded to Defendant's renewed invitation by raising his hand.

80. Plaintiff requested permission to ask the final question, as Plaintiff had done during a previous public question-and-answer session.

81. Plaintiff did not simply begin speaking.

82. Plaintiff did not interrupt another speaker.

83. Plaintiff sought recognition through the procedure Defendant himself had established.

84. Defendant refused to recognize Plaintiff.

85. Defendant stated:

"*No, sir. Mr. Booker, we gave you a chance to speak. You asked your questions. We appreciate you being here. We're not gonna hear a question from you, Mr. Booker.*"

86. Defendant thereby imposed an express, speaker-specific prohibition upon Plaintiff while the Q&A remained open to expressive participation.

## G. Defendant's Exclusion Was Selective and Retaliatory

87. Defendant had not closed the Q&A when Plaintiff sought recognition.

88. To the contrary, Defendant himself had just invited additional questions.

89. Plaintiff responded to that invitation in the same orderly manner available to other audience members—by raising his hand and seeking recognition.

90. Defendant did not state that the Q&A was over.

91. Defendant did not state that no participant could ask more than one question.

92. Defendant did not state that Plaintiff's proposed question was outside the permitted subject matter.

93. Defendant did not identify any contemporaneous disruptive conduct by Plaintiff as the reason for refusing recognition.

94. Plaintiff had remained quiet for approximately eighteen minutes.

95. Defendant instead expressly referred to Plaintiff's **previous expression**:

"*We gave you a chance to speak. You asked your questions*."

96. Defendant then announced:

"*We're not gonna hear a question from you, Mr. Booker*."

97. Plaintiff alleges that Defendant's stated justification was pretextual, selectively applied, and/or substantially motivated by Plaintiff's prior protected criticism and viewpoint.

98. Upon information and belief, other attendees were permitted to participate more than once.

99. Defendant had earlier represented that Plaintiff could remain and "participate."

100. Yet after Plaintiff complied and waited until Defendant invited additional questions, Defendant effectively announced that the expressive forum remained available to others but was closed specifically to Plaintiff.

101. Defendant thereby reduced Plaintiff's promised "participation" to permission merely to remain physically present as a silent observer.

102. Plaintiff alleges that Defendant treated him differently because of his previous speech, criticism of governmental and judicial authority, and/or anticipated viewpoint.

**CLEARLY ESTABLISHED FIRST AMENDMENT LAW**

103. Long before September 11, 2024, the United States Court of Appeals for the Fourth Circuit clearly recognized that the First

Amendment protects citizens against retaliation by government officials for exercising protected speech.

104. In Suarez Corp. Industries v. McGraw, 202 F.3d 676, 685–86 (4th Cir. 2000), the Fourth Circuit recognized that retaliation by a public official for protected expression may violate the First Amendment.

105. In Rossignol v. Voorhaar, 316 F.3d 516, 521–24 (4th Cir. 2003), the Fourth Circuit applied First Amendment principles where government officials allegedly retaliated against protected criticism and acted to suppress criticism directed toward their official conduct.

106. The Fourth Circuit subsequently stated the governing principle expressly in Constantine v. Rectors & Visitors of George Mason University, 411 F.3d 474, 499 (4th Cir. 2005):

"The First Amendment right of free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right."

107. Constantine further recognizes that a retaliation plaintiff must establish protected First Amendment activity, governmental action adversely affecting the exercise of First Amendment rights, and a causal relationship between the protected activity and the adverse governmental action.

108. The relevant adverse-action inquiry is objective; a plaintiff need not demonstrate that government retaliation successfully silenced him completely.

109. Government action capable of deterring a person of ordinary firmness from exercising First Amendment rights can satisfy the adverse-action requirement.

110. The Fourth Circuit had also clearly established before September 2024 that government officials may not administer an expressive forum through viewpoint discrimination.

111. In *Davison v. Randall*, 912 F.3d 666, 687–88 (4th Cir. 2019), the Fourth Circuit recognized that viewpoint discrimination is prohibited across forum classifications and condemned exclusion from a government-created expressive forum motivated by criticism of government officials.

112. Defendant therefore had fair notice long before September 11, 2024, that governmental authority could not be used to retaliate against a citizen for protected criticism or selectively suppress a disfavored viewpoint.

## H. South Carolina's Highest Court Had Likewise Recognized Protection for Verbal Challenge of Government Authority

113. The constitutional protection afforded citizens who verbally criticize or challenge governmental authority was likewise no novel proposition in South Carolina.

114. More than three decades before the events at issue, the Supreme Court of South Carolina decided *State v. Perkins*, 306 S.C. 353, 412 S.E.2d 385 (1991).

115. Relying upon First Amendment principles including *City of Houston v. Hill*, 482 U.S. 451 (1987), *Perkins* recognized the substantial constitutional protection afforded verbal opposition and challenge directed toward governmental officers.

116. *Perkins* is relevant here not because it was itself a § 1983 retaliation action, but because it demonstrates that South Carolina's highest court had long recognized that protected verbal criticism and challenge of governmental authority cannot simply be transformed into punishable misconduct because government officials dislike or take offense at the expression.

117. Defendant, who served as Chief Justice of that Court, therefore cannot reasonably characterize the underlying constitutional protection afforded criticism of government as novel or unforeseeable.

**THE CHALLENGED FUNCTION WAS NONJUDICIAL**

118. Plaintiff anticipates that Defendant may invoke absolute judicial immunity because Defendant occupied judicial office at the time of these events.

119. Absolute judicial immunity, however, is determined through a functional analysis.

120. The Supreme Court has instructed that courts examine **"the nature of the function performed, not the identity of the actor who performed it."** *Forrester v. White*, 484 U.S. 219, 229 (1988).

121. Judicial office does not transform every activity undertaken by a judge into a judicial act.

122. Plaintiff acknowledges that judicial immunity broadly protects judicial acts and is not defeated merely because a judicial action is alleged to have been erroneous, improper, or malicious. See *Mireles v. Waco*, 502 U.S. 9, 11–13 (1991).

123. That principle does not resolve this action because Plaintiff does not seek damages for an adjudicative act.

124. The scheduled judicial proceedings at The Citadel had concluded.

125. Defendant was no longer hearing or determining a pending cause when the challenged events occurred.

126. Defendant was not ruling upon evidence.

127. Defendant was not deciding a motion.

128. Defendant was not hearing argument from litigants.

129. Defendant was not rendering judgment.

130. Defendant was instead answering general questions from members of the public and moderating participation in a post-proceeding public Q&A.

131. Speaking to and answering general questions from members of the public following the conclusion of judicial proceedings is not itself the adjudication of a case or controversy.

132. Likewise, determining which attendees could participate in that post-proceeding public Q&A constituted public-event moderation rather than adjudication.

133. The specific function challenged herein was therefore nonjudicial and extrajudicial.

134. Defendant is consequently not entitled to absolute judicial immunity merely because he happened to occupy the office of Chief Justice while performing that nonjudicial function.

## THIS CASE DOES NOT CHALLENGE DEFENDANT'S AUTHORITY TO MAINTAIN ORDER

135. Plaintiff recognizes that the First Amendment does not disable government officials from maintaining order during public meetings and gatherings.

136. In *Steinburg v. Chesterfield County Planning Commission*, 527 F.3d 377 (4th Cir. 2008), the Fourth Circuit recognized governmental authority to enforce appropriate restrictions where a speaker refused to remain within the designated subject matter and engaged in conduct reasonably perceived as threatening the orderly progress of a public meeting.

137. Plaintiff's claim is materially different.

138. Plaintiff does not base liability upon Defendant's earlier direction that Plaintiff temporarily cease speaking.

139. Plaintiff complied with that direction.

140. Plaintiff then remained quiet for approximately eighteen minutes.

141. Defendant himself thereafter reopened the floor for additional questions.

142. Plaintiff responded by raising his hand rather than interrupting or seizing the floor.

143. Thus, at the time of the selective exclusion challenged herein, Plaintiff was not continuing to speak in defiance of Defendant's instruction.

144. Plaintiff was a silent audience member responding to Defendant's renewed invitation for questions.

145. Defendant nevertheless singled Plaintiff out and announced that Defendant would hear no further question from him.

146. *Steinburg* does not establish a governmental right to exclude an otherwise orderly participant because of the participant's earlier protected viewpoint after any legitimate disruption has ceased and the government has reopened the forum to further participation.

## COUNT I

## 42 U.S.C. § 1983

## FIRST AMENDMENT — VIEWPOINT DISCRIMINATION AND SELECTIVE EXCLUSION

### Against John W. Kittredge, Individually

147. Plaintiff incorporates paragraphs 1 through 146 as though fully set forth herein.

148. The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits government officials from suppressing protected expression because of the speaker's viewpoint.

149. Defendant opened the post-proceeding public Q&A to expressive participation concerning legal, governmental, judicial, and related subjects.

150. Plaintiff's speech concerned matters within the general subject matter of the gathering.

151. Plaintiff expressed viewpoints critical of government and governmental authority.

152. Defendant personally heard Plaintiff's expression and therefore knew Plaintiff's viewpoint.

153. Defendant possessed discretion to impose reasonable and viewpoint-neutral restrictions upon participation.

154. Plaintiff does not claim that Defendant was constitutionally required to recognize every raised hand or permit every attendee to ask unlimited questions.

155. The constitutional limitation upon Defendant's discretion was that he could not exercise that discretion for the forbidden purpose of suppressing a participant because of the participant's viewpoint.

156. Plaintiff complied with Defendant's earlier direction and remained quiet for approximately eighteen minutes.

157. Defendant thereafter expressly invited additional questions.

158. Plaintiff raised his hand and sought recognition.

159. Defendant selectively refused Plaintiff participation and announced:

"*We're not gonna hear a question from you, Mr. Booker*."

160. Defendant expressly connected that exclusion to Plaintiff's earlier expression by stating:

"*We gave you a chance to speak. You asked your questions*."

161. Upon information and belief, similarly situated attendees were permitted to participate more than once.

162. Plaintiff alleges that Defendant's selective refusal was motivated, in whole or substantial part, by Plaintiff's prior and/or anticipated viewpoint.

163. Defendant thereby subjected Plaintiff to viewpoint discrimination prohibited by the First Amendment.

164. Defendant acted under color of state law.

165. Defendant's conduct caused Plaintiff a completed deprivation of rights secured by the Constitution.

## COUNT II

## 42 U.S.C. § 1983

## FIRST AMENDMENT — RETALIATION FOR PROTECTED SPEECH

## Against John W. Kittredge, Individually

166. Plaintiff incorporates paragraphs 1 through 165 as though fully set forth herein.

167. Plaintiff engaged in protected First Amendment activity by speaking about and criticizing government, law, judicial authority, and governmental institutions.

168. Defendant personally heard Plaintiff's protected expression.

169. Defendant was therefore aware of Plaintiff's speech and viewpoint.

170. Defendant thereafter subjected Plaintiff to adverse treatment by imposing and enforcing a speaker-specific prohibition upon Plaintiff's further expressive participation in a Q&A that remained open to others.

171. Such treatment was capable of chilling or deterring a person of ordinary firmness from exercising protected First Amendment rights.

172. Defendant's own statements and the surrounding circumstances support a plausible inference of retaliatory causation.

173. Defendant initially warned Plaintiff to cease speaking.

174. Plaintiff complied.

175. Plaintiff remained quiet for approximately eighteen minutes.

176. Defendant thereafter reopened the floor.

177. Plaintiff followed the established procedure and raised his hand.

178. Defendant refused Plaintiff recognition.

179. Defendant expressly referenced Plaintiff's earlier speech as the reason for refusing further participation: "We gave you a chance to speak. You asked your questions."

180. Defendant then announced: "We're not gonna hear a question from you, Mr. Booker."

181. The temporal sequence, Defendant's personal knowledge of Plaintiff's protected speech, Defendant's express reference to that earlier speech, Plaintiff's intervening compliance, Defendant's renewed invitation for public questions, and Defendant's selective exclusion of Plaintiff collectively support the reasonable inference that Plaintiff's protected speech was a substantial or motivating factor in Defendant's adverse action.

182. The right to be free from governmental retaliation for protected expression was clearly established long before September 11, 2024. See *Suarez Corp. Industries v. McGraw*, 202 F.3d 676, 685–86 (4th Cir. 2000); *Rossignol v. Voorhaar*, 316 F.3d 516, 521–24 (4th Cir. 2003); *Constantine v. Rectors & Visitors of George Mason University*, 411 F.3d 474, 499–500 (4th Cir. 2005).

183. The prohibition against viewpoint-based exclusion from a government-created expressive forum was likewise clearly established. See Davison v. Randall, 912 F.3d 666, 687–88 (4th Cir. 2019).

184. South Carolina's own Supreme Court had also long recognized the substantial First Amendment protection afforded verbal criticism and challenge of governmental authority. *State v. Perkins*, 306 S.C. 353, 412 S.E.2d 385 (1991).

185. Defendant's conduct therefore violated Plaintiff's clearly established First Amendment rights.

## THE CONSTITUTIONAL INJURY PRECEDED AND IS INDEPENDENT OF THE SUBSEQUENT CONTEMPT EPISODE

186. Plaintiff expressly limits this action to Defendant's nonjudicial conduct occurring during the public Q&A **before the subsequent contempt episode**.

187. Plaintiff does not seek damages in this action based upon Defendant's subsequent entry or signing of a contempt order, adjudication of guilt, imposition of sentence, denial of reconsideration, or other subsequent act that Defendant may contend constituted a judicial function.

188. Plaintiff's First Amendment injuries alleged herein were complete when Defendant selectively refused Plaintiff further

expressive participation because of Plaintiff's protected speech and/or viewpoint.

189. Plaintiff's entitlement to judgment upon these claims does not require this Court to determine that the subsequently entered contempt conviction was invalid.

190. A factfinder could determine that Defendant violated Plaintiff's First Amendment rights during the earlier public Q&A while leaving entirely unresolved whether different conduct allegedly occurring thereafter independently supported a contempt judgment.

191. Thus, success upon Plaintiff's claims would establish only that Defendant violated Plaintiff's First Amendment rights **before** the subsequent contempt episode.

192. Success would not necessarily establish the invalidity of the subsequent contempt judgment.

193. Plaintiff's claims are therefore not dependent upon invalidation of the subsequent conviction. See *Heck v. Humphrey*, 512 U.S. 477 (1994).

## INJURIES AND DAMAGES

194. Defendant's actions deprived Plaintiff of rights protected by the First and Fourteenth Amendments.

195. Plaintiff suffered an actual loss of expressive opportunity because Defendant prevented Plaintiff from asking the additional question he sought permission to ask.

196. Plaintiff suffered selective exclusion from an expressive opportunity that remained available to other attendees.

197. Plaintiff further experienced humiliation, frustration, emotional distress, and chilling of his protected expression.

198. Plaintiff seeks compensatory damages for injuries proven at trial.

199. Plaintiff alternatively and independently seeks nominal damages for the completed deprivation of his constitutional rights.

200. Defendant's alleged conduct was intentional.

201. Plaintiff alleges that Defendant acted with knowledge of, or reckless disregard for, Plaintiff's federally protected rights by using governmental authority to retaliate against protected criticism and/or suppress a disfavored viewpoint.

202. Plaintiff therefore seeks punitive damages against Defendant individually upon proof satisfying the applicable federal standard.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Patrick Lee Booker respectfully requests that this Court:

A. Enter judgment in Plaintiff's favor upon the claims established by the evidence;

B. Award Plaintiff compensatory damages in an amount determined by the jury;

C. Award Plaintiff nominal damages;

D. Award punitive damages against Defendant John W. Kittredge individually upon the requisite showing;

E. Award Plaintiff recoverable costs;

F. Grant such other relief as the Court determines just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all claims and issues so triable.

Respectfully submitted,

**Patrick Lee Booker**
103 Rock Knoll Drive
Greenwood, South Carolina 29649

**September 11, 2026**